## FOGG v. OREGON SHORT LINE R. CO.

No. 4914. Decided August 6, 1931. (1 Pac. [2d] 954.)

*Geo. H. Smith, J. V. Lyle, R. B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for appellant.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

The appellant railroad is engaged in interstate commerce, and respondent worked for it in repairing a bridge. The provisions of the Federal Employers' Liability Act (45 US CA §§ 51-59) are applicable to the case.

It is alleged that the respondent and his fellow laborers were engaged in removing stringers from the Washoe Slough Bridge under the orders and directions of a foreman. The stringers were timbers approximately 30 feet long, 17 inches wide, and 8 inches thick. In order to remove them from the bridge it was necessary that all members of the gang work in concert. To accomplish this result it was necessary for the foreman or some one authorized to do so to direct how the work should be done and to order the employees to take

such positions at and near the ends of the stringer so that there would be an equal number of men at the ends, and to direct the men when they began to move or push the stringer in order to prevent injury to the laborers. It was further alleged that if the men at one end of the stringer should attempt to move it without the other end being moved at the same time, there would be great danger to the men on the other end on account of the stringer swinging as though on a pivot, thus permitting it to strike against the men in close proximity thereto.

There were further allegations that the plaintiff and six other men were directed to remove one of the stringers from the bridge; that plaintiff and one other employee took a position at one end of the stringer and the other five men went to the other end; that while plaintiff was standing near one end the men at the other end carelessly and negligently and without notice or warning to plaintiff commenced to push and shove their end, and by reason thereof the plaintiff's end of the stringer was caused to strike against his right knee, thereby injuring him. Plaintiff asked for the sum of $30,000, and there was a verdict in his favor for $9,584.64. From the judgment entered on said verdict, defendant appeals.

The assigned errors which have been argued by appellant relate to the following questions only: (a) Insufficiency of the evidence to justify the verdict for the reason that there is no substantial evidence that defendant was negligent, and that the evidence affirmatively shows the plaintiff assumed the risk of the accident resulting in his injuries; (b) permitting the wife of plaintiff to testify that plaintiff had not complained of injury after an automobile accident which happened prior to the time of his alleged injuries for which suit was brought; (c) erroneous instructions given by the court, and its refusal to give certain instructions asked by defendant; and (d) that the verdict is excessive. .

The first point urged here was raised by defendant's motion for nonsuit, its requested instruction No. 8, and the

motion for new trial. The point relates to the assumption by plaintiff of the risk of injury, and to the lack of negligence on the part of defendant. It is argued that if plaintiff was injured, such injury was caused by a danger incident to his employment, and inasmuch as the law is that he assumed such a risk, the defendant cannot be held liable. Moreover, it is urged that the evidence clearly fails to show that defendant was negligent.

There was testimony given by the plaintiff and the witness Nelson from which the jury might justly conclude that the following facts existed: The plaintiff and six or seven other men, constituting a "gang," were engaged under the direction of a foreman in removing or remaking a bridge over the Washoe Slough between Ontario, Oregon, and Payette, Idaho. This bridge was owned by the defendant company and was used by it in interstate commerce. It is conceded that at the time of the alleged injury to plaintiff the defendant was engaged in interstate commerce, and that the plaintiff working to repair or remake this bridge, was also then engaged in interstate commerce. The case is therefore governed by the Federal Employers' Liability Act (45 USCA §§ 51-59), and the fact that plaintiff was injured by reason of the negligence of fellow servants constitutes no defense to the action. The gang had removed a stringer from the bridge. It was 30 feet long, 17 inches wide, and 8 inches thick, and weighed about 1,000 pounds. It was lying on the ground in the slough, and had been placed on a sort of pivot; that is to say, the ground under its center was a little higher than at the ends, so that the stringer would move easily when pushed at either end. The foreman directed the men to lift it up and place it on a bank. There was testimony to the effect that the proper way to do this was for the men to spread themselves along the stringer, but as a matter of fact two of the men, including the plaintiff, went to one end, and the others, five or more, went to the other end. The first thing to be done, under the direction of a subforeman or "strawboss" was to raise it upon its

edge, for it was then lying on its flat side. It was proper and customary, according to the defendant's own witness and foreman, Henry Dann, for the straw-boss (he being one of the men aiding in lifting the stringer) to say, "All right, boys, get ready." He testified that before such an order was given, the men would not start to move. On the occasion when plaintiff was injured he took his place at one end of the stringer between the bridge and the stringer itself. The stringer was very close to the bridge, and it was desirable that the stringer be turned up from its flat side so that the men would have room to lift and move it. The plaintiff had just stooped and was getting ready to put his fingers under the stringer for the purpose of aiding in turning it, when the men on the other end, before any signal to begin had been given, pushed it and caused it to swing on its pivot. It struck the plaintiff between the knee and ankle, bent his knee backward, and thereby injured him.

The plaintiff did not assume the risk of the negligence of his fellow workmen in pushing the stringer against him before any order to begin was given, nor was such negligence a risk incident to his employment. We think what the Supreme Court of the United States said in *Reed, etc.,* v. *Director General,* 258 U. S. 92, 42 S. Ct. 191, 192, 66 L. Ed. 480, is on principle decisive of the question here presented, and no other citation need be given:

"In actions under the federal act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise, would conflict with the declaration of Congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers."

Of course, the act of Congress is not restricted to cases where death has occurred, but applies as well to those who are injured but who are not killed.

The question in this case, then, is: Is it to be held as a matter of law that the plaintiff should have foreseen or should have expected that the men at the other end of the stringer would begin to push before any signal to begin moving the stringer was given? To ask the question is to answer it.

We conclude, therefore, that the court was justified in denying the motion for nonsuit, in refusing to instruct the jury to find for the defendant, and in overruling the motion for new trial so far as this question is concerned.

The next point argued by appellant relates to the action of the trial court in permitting the wife of respondent to testify that the plaintiff had not made any complaint of injury from the tipping over of an automobile in which he was riding. The question must be considered in view of the following facts: Prior to the commencement of this action the defendant's claim agent asked plaintiff to give a statement in writing of the facts surrounding his claimed injury. The claim agent asked questions and wrote down in narrative form the information gained from the answers. A number of corrections were made by plaintiff before he signed the paper so prepared. He testified that he was hurried into signing it, and signed it only to get rid of the claim agent so that he could get back to his work. In the statement so signed by plaintiff this was written: "Sometime in May, 1926, I hurt this same knee, right knee, when I met with an accident in my automobile. I received a bad bruise to my right knee, and it was still a little sore when this accident happened in July, 1926." On cross-examination he was asked: "* * * And if you did not further state at that time in that conversation (referring to the conversation with the claim agent) that prior to that time, in the month of May 1926 you had been in an automobile accident in a Ford which had turned over with you on account of a broken radius rod and injured your knee and your knee was still sore at the time you say you were hurt on this Washoe Slough Bridge?" The witness answered, "No, sir, I did not make that statement." He was later asked on cross-exami-

nation if he had been in an automobile accident in which his Ford had turned over on him in May, 1926, and he answered in the affirmative, and then stated that he had not been injured in that accident. He was asked if he had signed the written statement prepared by the claim agent, and he admitted that he had done so. The writing was marked for identification, but was not offered in evidence as a part of the cross-examination.

The claim agent was in due time called as a witness for the defendant. He testified that the plaintiff had stated to him that he had injured his knee in the automobile accident, and this testimony was strengthened by the testimony of the witness Dann, the foreman, who was present, as he testified, when the statement was made. The defendant then offered the written statement and it was received as a part of defendant's case. Then, in rebuttal, the plaintiff denied that he had been injured in the automobile accident, which he, however, admitted occurred. In further rebuttal the plaintiff's wife was called, and she was asked if she remembered about her husband reporting to her an automobile accident, when his Ford car tipped over. To this defendant objected upon the ground that it was not proper rebuttal. "This thing," counsel said, "was all gone into on direct and cross-examination, and redirect." The court directed the witness to answer, and she said she had seen her husband the night of the accident. Then she was asked the question: "Either that night or any time thereafter, up until the time of this accident when you say he complained of being hurt, did he complain of any injury to his knee from that accident in the automobile?" Counsel for defendant said: "I make the same objection to this question, if the court please." Counsel for plaintiff argued that in view of the fact that defendant's counsel might argue to the jury that plaintiff's injuries were caused by the automobile accident and not by the accident at the bridge, he had a right to anticipate such argument and answer it with testimony. Counsel for defendant said: "You have had ample opportunity to do that on redirect exami-

nation." Just what was meant by this is not clear, but it is perfectly clear that the only objection made to the question was that it was not proper rebuttal. The objection was overruled and the witness answered, "No." The appellant now argues: "We submit that not only was the testimony offered not proper rebuttal but it was incompetent and prejudicial as well. There was nothing to rebut. The plaintiff admitted the accident and defendant offered no testimony at all with respect to whether plaintiff did or did not complain of an injury immediately thereafter, and we submit the court committed reversible error in overruling the objection."

The offered testimony was proper rebuttal. The defendant as a part of its own case had placed in evidence a written admission which defendant asserts was made by the plaintiff to the effect that plaintiff had received a bad bruise to his right knee in an automobile accident and that it was still a little sore when he received the injury for which he is seeking to recover damages. On this alleged admission the defendant very properly sought to show that the plaintiff's injury to his knee was due to the automobile accident and not to any injury received in attempting to move the bridge timber as asserted by the plaintiff. To overcome any such inference we do not understand that plaintiff is limited to his denial on his cross-examination that he made such statement as contained in the written admission, or to the statement made on his redirect examination to the effect that he did not tell anybody that his knee had been hurt in the automobile accident. The defendant has not favored us with any citation of authority or argument showing why it was error for the court to permit Mrs. Fogg to answer the question put to her. It seems to be well recognized that declarations of present pain and suffering are admissible as original evidence in all inquiries where pain and suffering constitute the question involved. 3 Jones, Com. on Evidence, pp. 2225, 2226.

When, as here, the plaintiff sought to show that he had sustained no injury to his knee in the automobile accident,

as countervailing the defendant's case, we see no reason why the plaintiff should not be permitted to show that he had made no complaint of pain and suffering in his knee. This assignment is without merit.

Several assignments of error relate to the question of the refusal of the court to give defendant's requested instructions. Defendant tendered seventeen requests for instruction. Of these, Nos. 2, 11, 14, and 16 (in part) were given. Complaint is made of the court's refusal to give Nos. 1, 4, 5, 9, 15, and 17. As to all these, except No. 17, we think the court, in its instructions Nos. 4, 9, and 14, full covered all aspects of the case from the defendant's standpoint. To give all the instructions asked by defendant would be repetition and would unduly emphasize its theory of the case. Without adverting to more, it will perhaps be sufficient to call attention to defendant's requested instruction No. 9, which is as follows:

"In this case you are charged that you may find if the circumstances disclosed by the evidence justify the conclusion that the alleged injury to the plaintiff was the result of an accident for which no one was to blame, and if you do so find, your verdict must be for the defendant."

This was refused, but the court, in instruction No. 9, instructed the jury as follows:

"You are instructed that the mere fact, if you determine it to be a fact, that there was an accident and that the plaintiff was injured, is not proof of negligence on the part of the defendant. Before the plaintiff can recover damages it is necessary that he should show by a preponderance of the evidence not only that there was an accident and that he was injured, but that the proximate cause of the accident was the defendant's negligence as alleged in the complaint. This negligence is not to be presumed, but must affirmatively appear from the evidence in the case by a preponderance thereof."

With respect to plaintiff's requested instruction No. 17 the appellant has caused it to be printed in the abstract as follows:

"Instruction No. 17. You are instructed that if you find from the evidence that the plaintiff has arthritis and was suffering from the same at the time of the alleged injury, if your verdict is for the plaintiff, you can not allow him any damages to compensate him for the suffering or disability which you find would have come to him in the absence of the alleged accident, and can only allow him such damages as will compensate him for such suffering and disability as you find would naturally have come to him from the accident."

Defendant's requested instruction No. 17 as shown by the transcript is as follows:

"If after the consideration of all the evidence in the cause you determine that the plaintiff, Mr. Fogg, was negligent and careless, and that his own negligence and carelessness was the sole cause of his injury, then I instruct you that your verdict must be for the defendant, no cause of action."

So far as the substance of the requested instruction is concerned, it was thoroughly covered by other instructions given by the court. Moreover, although appellant argues in its brief that the court committed reversible error in refusing to give instuction first above set forth as No. 17, although such an instruction was not requested by it, the appellant has not assigned any error based upon the refusal of the court to give on request No. 17. We have diligently searched the record, and do not find, among the seventeen requested instructions, any request for an instruction of similar import to that as printed by appellant in the abstract and the brief. We conclude that the court did not commit error either in giving instructions to the jury or in refusing to give the requested instructions, of which complaint is made.

The final point urged for a reversal is that the verdict is excessive. To support its contention the appellant cites thirteen cases dating from 1892 to 1914. No modern case is relied upon. It must be borne in mind that before we can interfere with the verdict of the jury in the allowance of damages, the amount allowed must be excessive and it must appear that the damages allowed

were given under the influence of passion or prejudice. Comp. Laws Utah 1917, § 6978. There is no suggestion by appellant that passion or prejudice is shown by the record, except as it may be inferred from the fact that $9,584.64 was allowed for an injury to plaintiff's knee. The evidence in the case tended to show that the plaintiff at the time of his injury was of the age of 56 years and that he was a carpenter earning about $33 per week of six days. After his injury he was first treated by the defendant's doctor in Nampa, Idaho, and later came to Salt Lake City, where he placed himself under the care of the company's doctors. By them he was sent to a hospital. A plaster cast was put on his leg from the thigh to the ankle, and this remained for about a month. He was then permitted to go home, and he afterwards returned to the hospital for treatment and was there kept in bed for six weeks, after which he was permitted to use a wheel chair, and later was given crutches and sent home. For three months he used the crutches and then reached a condition where he could walk with the aid of a cane. After that he was given a job as flagman at Nampa by defendant. Later he was requested by defendant to resume his old work as carpenter, which he declined to do, urging that he was unable to do heavy work. There is testimony in the record from which the jury might properly find that plaintiff will never again be able to do hard work at his trade of carpenter.

The question of excessiveness of damages has been frequently before this court. Quite recently we considered the question. *Morgan* v. *Ogden Union Ry. & Depot Company,* 77 U. 325, 294 P. 541. The rule was there reiterated that we are permitted to interfere with the verdict on this ground only when the facts are such that the excess can be determined as a matter of law, or that the verdict is so excessive as to shock one's conscience and to clearly indicate passion, prejudice, or corruption on the part of the jury, and that the trial court in passing on the question clearly abused its discretion

in permitting the verdict to stand. We have carefully read the transcript of the proceedings. There was apparently no appeal made to the passions of the jury; there was nothing brought out that would in any way tend to prejudice the jury against the defendant. The instructions given by the court to the jury carefully guarded the rights of the defendant and impartially stated the law applicable to the facts submitted to the jury. Then, again, the trial judge was in a position to better judge whether there was anything in the voice or demeanor of the plaintiff's attorneys which would have a tendency to prevent the defendant from having a fair and impartial trial. With this advantage over us he concluded that the defendant had had a fair trial and that the damages awarded were not excessive. We, while we may think that the jury was perhaps liberal in the allowance of damages, cannot say as a matter of law that such allowance was based on passion or prejudice, or that it is sufficient to shock the conscience. Hence this assignment cannot prevail.

The judgment appealed from is affirmed. Costs to respondent.

CHERRY, C. J., and STRAUP and ELIAS HANSEN, JJ., concur.

FOLLAND, J.

I concur as to matters of law stated in the prevailing opinion, but think that the amount of damages is sufficiently excessive to warrant a finding of bias and prejudice on the part of the jury and to justify the granting of a new trial.